We'll move to our fifth case this morning, Gerald Fitchen versus the commissioner. I have difficulty with the new commissioner's last name pronunciation. I think it's Kijakazi, I believe. All right, I see both counsel. Ms. Cohen, you may proceed. Thank you. May it please the court, Julie Cohen for the plaintiff appellant, Gerald Fitchen. This case involves an overpayment of disability insurance benefits by the Social Security Administration. Now, Mr. Fitchen began receiving benefits in 2000 due to stage five throat cancer. In 2001, although his treating physician opined he remained disabled, he returned to some work activity and he informed the local SSA office about this work activity. He then got a series of different letters from SSA giving confusing, conflicting information about how his work activity was impacting his benefits. This all culminated in 2003 when the agency said, we've overpaid you for certain months, we want that money back. Mr. Fitchen returned some benefits and the agency said, you're ineligible for benefits again. So he continued working and he continued getting these reassurances from Social Security through letters that they were taking into account his earnings with his benefits. For instance, the 2005 letter from Social Security said, quote, we checked your records to see if any changes in your benefits are necessary. We are increasing your benefit amount to give you credit for your earnings in 2004, which were not included when we figured your benefit before. So these letters reasonably read that someone at Social Security had looked at his record, looked at the earnings, and that was a factor in his benefit award determination. This was echoed in a total of five notices from 2002 through 2006. Until appeal, the agency never suggested that Mr. Fitchen did not report work activity and that the agency did not know that he was working and the amount of his earnings at all relevant times. Indeed, these letters demonstrate that the agency did know he was working and the amount of his earnings. Now in 2009, SSA terminated benefits when they realized that they had been mistaken in the benefit determination awards. And there's no problem with them terminating benefits in 2009 but then they went a step further and they retroactively terminated benefits. They backdated that termination thereby changing earlier awards to correct those awards and create this overpayment. But they did all of that without acting consistent with the rules of administrative finality as set forth by the agency's reopening regulations and recognized by this court in cases like Hines versus Shalala, Dugan versus Sullivan. It's been recognized by other circuits as set forth in our brief by the agency's own internal manual, the TOMS, as we also set forth in our brief. Now the appeals council, which issued the final decision in this case, they legally erred by explicitly finding that the reopening regulations were not at issue and by not applying those in the retroactive termination of benefits. Now the appeals council, although finding that the reopening regulations did not apply, did affirm that the 2002 through 2006 benefit determination letters were initial determinations. And that phrase, that has a specific meaning in the regulations and for the agency. That means it's a determination to which appeal rights apply and which becomes final. So it can be reopened at any time within a year, but after that year, only for specific exceptions, such as within four years for good cause or at any time for fraud. And the agency has never alleged those exceptions in this case. Now, given that it's undisputed, the 2002 through 2006 award notices were initial determinations. The regulatory provisions of administrative finality apply equally to those decisions. Those decisions, the 2002 through 2006 became final and the agency needed to reopen them to change the decisions consistent with the regulations and this court's cases in order to correct those determinations and then assess this overpayment. So when I thought during this time period, your client was on a continuing disability review. Yes, Your Honor, there were, I believe two, there were different continuing disability reviews and his disability continued because his treating physician continued to find that he was disabled. And that is, so he continued to work even though his treating physician did find he was disabled, which was the reason for the medical part of the continuing disability review that he was found to continue to be disabled. But does he not have a reporting duty during a continuing disability review? In my understanding of the reporting duty to report income, no matter what status he's in, right? Yes, Your Honor, he did report when he returned to work and the agency never alleged until this appeal brief that there was any issue with him not reporting work. And they knew he was working and the amount of his earnings, that's how they were able to generate these letters from 2002 to 2006. So there has never been any issue until this appeal brief that there was any problem with him reporting or that they didn't know he was working or they didn't know the amount of his earnings because they did know he was working. He did report, they did know he was working and they at all relevant times knew the amount of his earnings. It's just that there was some mistake at the agency and they didn't correctly determine his benefit awards until 2009. But he himself was aware that he was receiving overpayments based on his earnings as he acknowledged. Your Honor, he did acknowledge that in regards to, and I believe what Your Honor might be referring to is the determination of fault. When the appeals counsel referred to this statement from the agency that quote, he knew he was entitled to disability benefit, excuse me, he was new, he was not entitled to the disability benefits he was receiving. He returned several checks to us from the time 1202 to 10-3 and that deals with this earlier overpayment in 2003. So when he began work in 2001, he reported the work, there was confusion, they sent 2003 yields overpayment and he returned checks. And that statement went to that earlier overpayment. Now the agency does not explain why that would be applicable in consideration of this later 2009 overpayment. And indeed to find fault here, they would have to find, there would have to be a finding that he should have known that these repeated agency award determinations telling him benefits have been calculated based on his earnings were just baseless. That there's no legal support for this and he has to go out and do some kind of his own investigation to make sure what's being told to him is valid. That would put a huge burden on claimants and on the agency as well to be responding to all of this. But that is in a separate part. The first part is they needed to reopen it. There has been no reopening. If they have reopened it, if this court finds that they did not need to reopen it, then it would go to the second step of was he at fault? And if he was at fault, then he cannot be eligible for overpayment. But it does not appear, it does not seem the at fault is supported both because as I was just saying that he would have to presume there was no, there was no basis to those letters. The appeals counsel made no credibility or subjective finding. The palms, their internal manual, that does not support a finding of fault. So with all of that, the second step of the overpayment that there was fault and so he's not entitled to that is not supported. And that is a separate question of whether or not there, whether or not the rules of administrative penalty should have been followed and they should have applied those to reopen the case to assess the overpayment in the first place. If there's no further questions at this point, I'll save the remaining little over a minute for rebuttal. Okay, Ms. Betz. Thank you, Your Honor. I'm Julie Betz representing the commissioner of social security in this matter. This overpayment case, Mr. Fitchin makes no claim that he was actually entitled to the benefits at issue in this case. He does not dispute that as I say, correctly calculated the amount of the overpayment. And he has constructed his argument around a series of red herrings that have nothing to do with the assessment of his overpayment. Primarily the recomputation notices that counsel has just discussed. Those recomputation notices are not awards of benefits. They are not decisions on entitlement. They are computer generated automatic letters generated not as Mr. Fitchin alleged in his briefs on any reporting that Mr. Fitchin made to SSA, but on tax data from the Internal Revenue Service and FICA taxes that employers report to the agency. These, the agency's office of chief actuary automatically issues a recomputation notice of the primary insurance amount. Whenever a person's wages combined with the formula for recomputation, which is set renewed every year, show that there is an increase in their primary insurance amount, which for a person receiving benefits is the same as their monthly benefits. These recomputation notices are initial decision, excuse me, they are initial decisions, which may be appealed, but the scope of the appeal is strictly limited. If any of these notices were to be reopened, there are three and only three questions that could be answered. One, did the information that the agency received from the IRS correctly reflect Mr. Fitchin's earnings? Two, did the office of chief actuary correctly develop a formula as required by statute for determining the person's primary insurance amount based on the national wage index? And did they correctly apply the formula to the earnings? The notion that the agency would have to go back and change the amount to zero is simply incorrect. We can't do that because this is not a decision on entitlement. It's a decision on the primary insurance amount. The November 2006 letter that was just referred to, if one were to go back and say, does this need to be corrected? The answer is no, because it correctly states that his primary insurance amount as of November 2006 was approximately $1,694. That has not changed. There is a general misapprehension of what reopening means and how it applies. Reopening means going back to a decision and determining if it was incorrect as of the time that it was made, not if the same decision would be made differently six years later. And as we pointed out in our brief, none of the initial determinations in this case needed to be reopened because they were all correct as of the time that they were made. The award of benefit agency correctly determined that Mr. Fitchin was entitled to benefits based on both his physical and financial condition as of February, 2000. In October, the agency correctly determined that Mr. Fitchin had used up his trial work period that because of his medical condition, he could continue to receive benefits as long as he did not earn more than $800 a month. There was a notice in December of 2003 also saying, essentially the same thing. We will find that your disability is continuing as long as you are not working. And if you are working and earning more than $800 a month, then we will find that your disability has ceased. The reporting responsibilities also, Mr. Fitchin did report his work in 2001. He responded truthfully when SSA confronted him about his work in 2003 and 2007. But by his own testimony at the administrative hearing, and I believe this is at pages 609 to 610 of the administrative record, he made no further reports after 2003, which means that during a period from 2004 through 2007, when he held at least five different jobs earning between 50 and $75,000 a year, he made no reports to SSA about that income. So there were simply no initial decisions that need to be reopened. That is what reopening means. And the recomputation notices, that simply is a procedure that, they're not entitlement decisions. As your Honor noted, the agency did conduct two continuing disability reviews, which the agency is allowed to make at any time. The continuing disability reviews do not limit how far back the agency may look, how long a person has been receiving disability benefits. And in 2003, the agency correctly determined that Mr. Fitchin disused his trial work period and could continue to receive benefits only as long as he did not work. In 2007, SSA revisited his entitlement to benefits for the first time since 2003. Actually, they initiated the CDR in 2007. And in 2009, correctly determined that Mr. Fitchin had not been entitled to benefits since January of 2004. Again, there are no intervening decisions on entitlement that had to be reopened. That is what reopening means. So both as to the question of fault, it is the commissioner's position that the agency did not need to look beyond Mr. Fitchin's own statements of fault. Mr. Fitchin did not argue that his assertion of, that he knew he was not entitled to benefits was limited to the first overpayment until his briefs in federal court. Moreover, he made them when confronted in 2007 with his work since 2003 and made an additional statement under penalty of perjury. This is at page 56 of the administrative record. In 2010, when he was appealing the second, the requesting waiver for the second overpayment, that he knew that he and SSA were both at fault. The agency did not need to go beyond that. If they, and they did not err in making their decision, alternative decision on fault on that basis. If they had gone beyond it, alternatively there is ample evidence of fault for the period after 2006. And moreover, as Mr. Fitchin concedes, fault is not the end of the issue. There are simply no set of facts under which Mr. Fitchin would qualify for waiver in this case. He had already repaid the overpayment in 2016. So he does not meet any of the criteria for recovery being against equity and good conscience. And his argument that he knew he received tax forms, that would completely swallow the exception because everyone receives tax forms on social security benefits because they are considered income. Similarly, Mr. Fitchin ignores the fact that he was repeatedly told about the income limitations and the ruled requirements for working while disabled. But the primary, the position, commissioners primary position in this case is that the reopening regulations simply don't apply because there was no decision that needed reopening. Mr. Fitchin has argued, at least in his reply brief, that because an overpayment is an improper payment, that there must be some sort of incorrect decision that has to be corrected. That is not the case. And Mr. Fitchin, excuse me, an overpayment that is based entirely on post-entitlement actions does not require the reopening of any earlier decisions. So none of the decisions in this case required reopening in order to determine that Mr. Fitchin was not in fact entitled to benefits from January of 2004 through 2007. He does not dispute the fact that he worked full-time earning a high wage or that he was informed of his reporting requirements, which he did not follow, at least as after 2003. Currently, Mr. Fitchin has implied that his case is unusual or unique. It is not. The recomputation notices are sent automatically for any person whose beneficiary record indicates that they are currently receiving benefits. As I, about 90% of all SSA overpayments result from people working while receiving benefits, which means that these sort of recomputation letters occur in the vast majority of overpayment cases. And I can confidently state that they are never considered in terms of the application of SSA's rules of administrative finality, because they have nothing to do with entitlement. And in fact, in this case, correctly calculated Mr. Fitchin's primary insurance. I see that my time is up. So I would like to ask the court to affirm the commissioner's decision, which correctly ruled that reopening was not an issue in this case, because the recomputation notices applied only to the calculation of his benefits and not his entitlement to benefits. Thank you very much. Thank you very much. Thank you. So to say that reopening is not an issue in this case is to go contrary to the regulations, this court's decisions, the agency's own manual. Here, the appeals council, which issued the final decision, stated the 2002 through 2006 letters were initial determinations. The regulations apply the finality and reopening to everything listed as an initial determination in the regulations, not just the specific things which the government is calling entitlement decisions, but every single determination that's listed as initial determination. To say that the letters just read as some computer, they do not read as though some computer just kicked them off. An example is the government attached to exhibit C to their brief, a COLA, and there it specifically gives a calculation that says if you object to this calculation, object to this specific thing. That was not the case in these 2002 to 2006 letters. They said, we looked at it, we figured in your earnings, and this is what you have for disability benefits. The government is asking claimants to just assume letters they get from Social Security are completely invalid, that they can't put any trust in those, and to investigate on their own. And that's an impossible standard. So, I'm sorry, I see my time is up. So, thank you. We would ask the report, please reverse. Thank you very much. Our thanks to both council. The case is taken under advisement.